CaRuthbes, J.,
delivered the opinion of the Court.
This action was for breach of a contract to marry, and the recovery was for $5,000 damages.
It is insisted that the damages are excessive, and so we think; but whether to that extent which would, under the rules on that subject, authorize us to reverse on that ground alone, is a different question. There are some cases in which the engagement to marry is used for the basest purposes, by unprincipled men, and in these, the damages cannot well be too heavy. In this case, proof was admitted tending to show that the defendant succeeded in the seduction of the plaintiff by the *214 confidence inspired in that way. She was certainly delivered of an illegitimate child, which she charges upon him, and insists that she was induced to surrender her virtue in consequence of his reiterated assurances, that he would comply with his ' contract to marry her. This is the position assumed in the argument upon the circumstances proved.
But a question of law is here made, as to the admissibility of evidence of seduction in a suit for breach of a contract to marry. The Court below admitted it, in aggravation of damages. To show this was error, we are referred to a passage in 2 Greenleaf on Ev., sec. 256, where, in illustration of the rule, that the damages to be given must be the natural and proximate consequence of the act complained of, he says, “it has been held that, in assumpsit for breach of a promise to marry, evidence of seduction is not admissible in aggravation of damages,” with a reference to cases.
The contrary was settled in Conn v. Wilson, 2 Tenn. R., 234, as early as 1814. The Court say, “the cases referred to in 8 Mass. R., 71 and 189 demonstrate, that it was proper to receive this evidence in aggravation of damages. * * * Morality requires it in order to repress the libidinous advances of the male sex, under dishonest and seductive assurances of marriage.” We are not aware that this decision has ever been departed from, in practice, by our Courts. Whatever the opinions of elementary writers, or the Courts of other States may be, that is our law, and we are not disposed to change it. A promise to marry is not unfrequently one of the base and wicked tricks of the wily seducer to accomplish his purposes, by overcom *215 ing that resistance which female virtue makes to his unholy designs. Whenever seduction follows an engagement to marry, it may well be asserted that the promise, on the part of the man, was intended to cover his designs upon her virtue, by winning her affections and confidence. The fact that the hypocritical suitor is prepared to destroy her character, shows, conclusively, that it was not his intention to make her his wife. His success in the destruction of his victim, is, generally, the result or consequence of his engagement to marry. This injury, then, is sufficiently proximate to be taken into the account in estimating the damages in a suit of this description.
We fully concur with his honor, in that part of his charge to which objection is made, to the effect, that if the jury “ believed from the testimony in the cause, that the defendant entered into a marriage contract with the plaintiff, and that he resorted to the contract as a means of debauching and seducing her, and for the purpose of gratifying his lustful and brutal passions, then the jury should give to the plaintiff exemplary and substantial damages.”
Where no other injury follows a breach of this contract but disappointed hopes and the mortification of rejected love, the measure of damages would be different, because honor and chastity are still left, and the injury may be repaired. But when all is lost, happiness, honor, character, a ease is certainly made for “ exemplary and substantial damages.” That the parent has an action for damages in this last case, can make no difference as to the amount' of compensation to which the sufferer is entitled.
*216 It is objected, that there was no proof in the canse to which this strong proposition in the charge could apply. If so, it was improper, as the charge should be confined to the case made out in the proof, and the jury might, as argued, be misled by an abstract principle, though correct, which had no application to the facts in proof. But if there was testimony tending to raise the question, and this cannot be disputed, it was not for the Court to determine whether it was sufficient or not; it was proper to leave that to the jury, and declare the effect in law if established to their satisfaction. He did nothing more.
It is contended, that as the defendant was poor, it was erroneous in the Court to charge, as he did, that the jury could not look in the assessment of damages, to .his ability to pay. The charge on this point, was, “that the damages to be recovered are in the sound discretion of the jury, under the circumstances surrounding the case. The jury, in assessing damages, are to inquire, not what the defendant can pay, but what the plaintiff ought to recover. They may look to the rank and condition of the defendant.” A man’s poverty certainly should not secure him from damages commensurate with the injury inflicted. It is enough that they cannot be collected when recovered. The charge would, perhaps, have been more full and accurate to have made some reference to the estate of defendant, as a matter to be looked to in the discretion of the jury, but error cannot be predicated of this omission.
There is proof in this record very seriously impeaching the character of the plaintiff, for want of prudence and proper female modesty in her intercourse with men; *217 and so is ber sister Martha, the main witness in proving the contract as well as the seduction, convicted of many contradictions and inconsistencies; but on the other hand, they are well sustained in their character and reputation by many reputable witnesses. All these matters have been passed upon by the jury, and they have in their verdict fully vindicated them, and it is not for us to say that their conclusions were wrong.
But amidst the doubts and difficulties in the proof as to the contract itself, and the paternity of the child, we think the verdict was a very strong one. It is right, in this kind of cases, to lay a heavy hand upon the foul and deliberate betrayer of a worthy woman’s confidence; but there may be danger of going so far as to hold out a temptation to an unprincipled woman to seek her fortune by the too easy surrender of her honor, or to avenge imagined wrongs. The best interests of society, and public policy, as well as the cause of morality, may be put in jeopardy by either extreme. Though it is generally true, yet not always so, that the fault is entirely on the side of the man in these unfortunate occurrences. There may be danger, unless a wise discrimination is observed by juries and Courts, between the cases, in reference to the character of the parties and the attending circumstances, of holding out a bribe in these large verdict's, to the wicked and unprincipled to entrap unwary youth, and tempt the incautious and unsuspecting. ■
After all, we do not feel authorized to grant a new trial in this case upon the single ground of excessive damages, although we consider the amount entirely disproportionate to the case made out in the proof. The law on this subject is correctly laid down in 2 Greenleaf, *218 see. 255: “In. trials at common law, the jury are tbe proper judges of damages; and where there is no certain measure of damages, the Court, ordinarily, will not disturb their verdict, unless on grounds of prejudice, passion, or corruption in the jury.” To this rule we have conformed our practice, and it is the only safe one on the subject.
The Court, in his charge, gave the defendant the advantage of every principle of law applicable to the facts proved, that could absolve him from the obligation of his contract. He told them that if the promise was made in consideration of illicit intercourse; if the plaintiff was delivered of a child, after the promise, of which he was not the father; if he supposed her to be modest and chaste, and it turned out she was not, he would not be liable for a breach of his contract to marry her.
It is enough to say, in reference to the affidavits offered on the motion for a new trial, that there is nothing in them to authorize it. The principle point is, that it is made to appear by the affidavit of one of the jurymen, that he was related within the prohibited degree, by affinity, to the plaintiff. But his wife was long before dead, and that dissolved the relationship, and removed the disability. Independent of this, it was perhaps too late then to make the question.
We are constrained to affirm the judgment.